———o———

5537-38.

(Court of Appeal, Parish of Orleans.)

## IMPORTERS & TRADERS NATIONAL BANK vs. J. B. ABRAHAM AND CENTRAL STORES, INCORPORATED, ET AL.

Issues of fact only are involved herein.

Appeal from the Civil District Court, Division "A."

Merrick, Lewis, Gensler & Schwartz, for plaintiff and appellee.

Hall, Monroe & Lemann, for defendant and appellant.

Chaffe & Cahn, attorneys.

DUFOUR, J.—In 1907, the defendant corporation having gone into the hands of a receiver, one Simon Gumble offered to advance funds sufficient to take it out of the receiver's hands and to return it as a going concern to the control of its stockholders.

To this end, he offered in the alternative to the corporation's creditors two propositions.

1st.  50 per cent in cash in full settlement;

2nd.  75 per cent in notes of the defendant corporation, to be paid in monthly installments.

All the creditors except the plaintiff accepted one or the other of these offers.

The plaintiff's claim arose from its discount of defendant's notes aggregating $40,600.00, and to partly secure which the bank received in pledge as collateral notes to the amount of $6,050.00 signed by J. B. Abraham, drawn to the order of the Central Stores duly endorsed by the corporation and also by Horace Gumble and Hechinger, who were also endorsers of the notes representing the corporation's indebtedness to the bank.

Upon plaintiff's refusal to accept Gumbel's foregoing propositions, negotiations were resumed for the purpose of bringing about an arrangement of the bank's claim.

This attempt culminated in a settlement which is evidenced and the terms of which are described by a draft and a receipt which are found in the record.

The draft for 50 per cent of the bank's claims against the Central Stores and its endorsers, (less certain agreed deductions for unearned interest not pertinent to this controversy) was drawn on Simon Gumbel by Sol Wexler, receiver of the corporation, to the order of Lehman, Stern & Company, whose Maurice Stern was the New Orleans Agent **pro hac vice** of the Importers & Traders Bank of New York.

In the body of the draft, in Wexler's handwriting appear the words; "notes attached hereto."

The receipt signed by Maurice Stern for the bank reads as follows;

"We hereby acknowledge to have received from S. Gumbel the sum of $20,133.77, and, in consideration thereof, we hereby assign and transfer unto the said Simon Gumbel, with full subrogations of all rights, our entire claim against the Central Stores and endorsers, amounting to $40,600."

Then follows the words in Stern's handwriting; "we retaining the collateral notes we have."

Where, as in this case, the contention practically is that a debt has been extinguished or remitted, the burden of proof logically falls upon the party offering such defense.

The intervenor's claim is substantially that the bank originally held a claim against the Central Stores, against Hechinger and Gumbel as endorsers, and against Abraham as maker of the collateral note, and that, by its assignment to Gumbel, it surrendered its entire claim against the Central Stores and the endorsers and retained only their claim against Abraham.

We do not think that the phraseoly of the draft and the receipt warrants any such inference or assumption.

It is true that the receipt recites that the assignment made to Gumbel is of "the entire claim against the Central Stores and endorsers," but this clause cannot fairly be interpreted as though it stood isolated.

It must be construed and its meaning be ascertained by reference to the context of all of the other parts of the instrument which contains it.

The word "entire" is clearly modified in its scope by

the phrase "notes attached hereto" and, "we retaining the collateral notes we have."

Where the notes representing the entire claim of the bank are said to be "attached hereto," it is an irrestible conclusion that the assignment does not go beyond these restrictive words (attached hereto).

And where the further declaration is added in **handwriting** to the **printed** receipt that "we retain the collateral notes we have," it would seem quite clear that the pledged note referred to was not included in the transfer to Gumbel, and that the only claim relinquished against the Central Stores and endorsers was that evidenced by the notes attached to the draft, representing nothing beyond the original indebtedness of $40,600.

Had the intention been different, the matter could have been made clear and the purpose could have been easily accomplished by the simple precautionary expedient of erasing the endorsement of the Abraham notes.

Turning from instrument to the verbal testimony received without objection on the theory that the receipt and contract are ambiguous and hence subject to explanation, we find that Wexler states that, according to his understanding, there was no further claims against the Central Stores or the endorsers.

But Stern says that he had no knowledge of any such understanding and Bliss, cashier of the plaintiff bank, asserts the intention to have been that the bank "would have the right to collect these notes in full from all parties."

The intervenors have not sustained the burden imposed upon them by law.

Our conclusion is, that the plaintiff did not assign to Gumbel any of its claims arising under the Abraham note and that its right to proceed against the makers and

endorsers thereof alike remains unimportant.

We have not deemed it necessary to discuss the points mentioned at the oral argument but not insisted on in the briefs.

Judgment affirmed.

May 13th, 1912.

———o———

5561.

(Court of Appeal, Parish of Orleans.)